# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABUCAR NUNOW ABIKAR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRISTOL BAY NATIVE CORPORATION, et al., <br><br> Defendants. | Case No.: 3:17-cv-01036-GPC-AGS <br><br> **ORDER DENYING WITHOUT PREJUDICE MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** <br><br> **[ECF No. 37]** |

Before the Court is Plaintiffs' motion for leave to file a second amended complaint. (ECF No. 37.) The motion is fully briefed. (*See* ECF No. 42 (Defs.' Response); ECF No. 43 (Pls.' Reply).) For the reasons explained below, the Court DENIES the motion because amending the operative complaint to add the two claims proposed by Plaintiffs would be futile. Because additional allegations may cause these claim to reach the level of plausibility, however, the Court denies the motion to amend without prejudice.

**I.     Background**

Plaintiffs filed this putative class action on May 18, 2017, asserting claims of discrimination under Title VII and 42 U.S.C. § 1981. (ECF No. 1.) Defendants in this case are Bristol Bay Native Corporation ("BBNC"), Glacier Technical Solutions, LLC ("GTS"), and Workforce Resources, LLC ("Workforce"). Plaintiffs allege that Defendants, Plaintiffs' employers, discriminated against Plaintiffs on the basis of race, color, national origin, gender, sex, and religion, and also retaliated against Plaintiffs for

speaking out against such discrimination.[1] Plaintiffs amended their claim as a matter of course on October 6, 2017, adding claims under California's Fair Employment and Housing Act ("FEHA"). (ECF No. 5.)

On January 9, 2018, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' First Amended Complaint (the "FAC"). (ECF No. 18.) In that order, the Court dismissed a sizable portion of Plaintiffs' claims. It dismissed Plaintiffs' Title VII claims because, under 43 U.S.C. § 1626(g), Title VII does not govern the actions of Defendants as employers. (*Id.* at 5–6.) That statute provides:

> [f]or the purposes of implementation of the Civil Rights Act of 1964 [42 U.S.C. § 2000a et seq.], a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity shall be within the class of entities excluded from the definition of "employer" by section 701(b)(1) of Public Law 88-352 (78 Stat. 253), as amended [42 U.S.C. § 2000e(b)(1)], or successor statutes.

43 U.S.C. § 1626(g). Because the FAC alleged that BBNC is an Alaskan Native Corporation and that BBNC wholly owns GTS and Workforce, the Court found that Defendants were not "employers" for purposes of Title VII. (ECF No. 18 at 5–6.) The Court also found that the "federal enclave doctrine" caused federal preemption of Plaintiffs' FEHA claims to the extent that those claims were based on work performed at Camp Pendleton. (*Id.* at 10–11.) The Court explained, however, that the federal enclave doctrine did not cause preemption of Plaintiffs' FEHA claims premised on work performed outside of Camp Pendleton. (*Id.* at 11–13.) Last, while the Court rejected Defendants' challenge to Plaintiffs' claims under 42 U.S.C. § 1981, it noted that § 1981 provided only for claims of disparate treatment on the basis of race, and not for claims based on a disparate impact theory or asserting sex or religion discrimination. (*Id.* at 13–16.)

---

[1] A more detailed description of the factual allegations in this case can be found in the Court's ruling on Defendants' motion to dismiss Plaintiffs' First Amended Complaint. (ECF No. 18.)

2

3:17-cv-01036-GPC-AGS

On May 22, 2018, Plaintiffs moved for leave to file a second amended complaint. (ECF No. 37.) The Proposed Second Amended Complaint ("PSAC"), attached to the motion, adds claims of (1) breach of contract and (2) fraud and deceit. (*See* ECF No. 37-3 (PSAC); ECF No. 44 (redline version of the PSAC, displaying proposed changes to the FAC).)

The new breach of contract claim alleges that while Plaintiffs were employed by Defendants,

> written and oral representations were made to [Plaintiffs] stating that as a term and condition of their employment, any employee who believed he or she was treated in a manner that violated the Civil Rights Act of 1964, Title VII . . . due to discrimination, harassment, or retaliation as prohibited by Title VII had the right to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") the federal agency charged by law with receiving and investigating and, if appropriate, prosecuting claims of discrimination under Title VII.

(PSAC ¶ 126.) The PSAC lists three such representations: (1) a poster in GTS's Oceanside office stating that employees experiencing discrimination should contact the EEOC (PSAC ¶ 126(a)); (2) Workforce's employee handbook (*see* ECF No. 13 at 5–10[2]), which stated, *inter alia*, that no Workforce employee "will discriminate against . . . a fellow employee because of race, religion, color, sex, national origin, age, disability, veteran's or any other legally-protected status" (PSAC ¶ 126(b) (incorporating by reference the relevant portion of Workforce's handbook, found at ECF No. 13)); and (3) BBNC's website, which, at the time the FAC was filed, included a statement that BBNC was an "equal opportunity employer" that "recruit[s], employ[s], train[s], compensate[s], and promote[s] without regard to race, religion, creed, color, national origin, age, [or] gender" and that "EEO is the law," and also had a link connected to the EEOC website and an EEOC poster referring to Title VII and directing employees to file complaints of discrimination with the EEOC (PSAC ¶ 126(c)). The PSAC alleges that

---

[2] Pagination citations in this order refer to the pagination provided by the CM/ECF system.

these representations created a contractual obligation on the part of Defendants to comply with Title VII by avoiding discrimination and providing Plaintiffs with remedies if they experienced discrimination. (PSAC ¶ 127.) The PSAC also alleges that Plaintiffs relied on these representations when they accepted employment with Defendants. (PSAC ¶ 128.) According to the PSAC, Defendants breached these contractual obligations by taking the position in their earlier motion to dismiss that Plaintiffs are not entitled to Title VII's protections. (PSAC ¶¶ 129–30.)

The proposed fraud and deceit claim is based on the same factual premise. (*See* PSAC ¶ 137.) The PSAC alleges that the representations discussed above were false because Plaintiffs were, in fact, not covered by Title VII, and that Defendants knowingly made these false statements to induce Plaintiffs to accept and continue their employment by Defendants. (PSAC ¶¶ 138–39.) According to the PSAC, Plaintiffs did not discover this fraud until they unsuccessfully sought redress as a result of experiencing discrimination. (PSAC ¶ 140.)

## II. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) instructs that after a plaintiff amends her complaint as a matter of course, she "may amend [her] pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." The Court considers "four factors when reviewing a decision whether to permit an amendment: (1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

## III. Discussion

Defendants argue, *inter alia*, that Plaintiffs should not be granted leave to file the PSAC because amending the complaint as proposed would be futile. Considering the PSAC as proposed, the Court agrees.

A proposed pleadings amendment that adds new claims is futile when the proposed claims are not supported by facts setting out a plausible claim for relief. *See Labrador v.*

*Seattle Mortg. Co.*, 681 F. Supp. 2d 1106, 1115 (N.D. Cal. 2010). To state a plausible claim for relief, a plaintiff need not include "detailed factual allegations," but must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### A. Breach of Contract

According to Defendants, adding the PSAC's breach of contract claim would be futile because none of the representations at issue created, or were included in, a contract between any of Defendants and any of Plaintiffs. Under California law, a plaintiff asserting a breach of contract must prove (1) "the existence of the contract," (2) "plaintiff's performance or excuse for nonperformance," (3) "defendant's breach," and (4) "the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). The Court agrees that the PSAC's proposed breach of contract claim does not state a plausible claim for relief.

Defendants argue that the PSAC's allegation that GTS displayed a poster instructing employees to contact the EEOC in the event that they experience discrimination does not support a plausible breach of contract claim because it is not plausible that Plaintiffs, most of whom cannot read English, read and understood the poster. But the PSAC cites a statement by Plaintiff Osman M. Mohamed that while working for GTS, he saw, read, and understood the poster, and as a result he went to the EEOC in light of his facing discrimination. (*See* ECF No. 12 ¶¶ 3–4.) Thus, Plaintiffs have alleged that at least one of them read and understood the poster. Nonetheless, the Court agrees that the allegations about that poster do not support a breach of contract claim. According to the PSAC and the Mohamed declaration (incorporated by reference in the PSAC), the poster in GTS's office stated that employees who want to complain about employment discrimination should contact the EEOC. (PSAC ¶ 126(a); ECF No.

12 ¶ 3.) Even assuming that this was a binding promise on Defendants' part, the PSAC does not allege that Defendants breached that promise. There is no allegation that Defendants prevented Plaintiffs from contacting the EEOC, which was the only "promise" made in the poster as it is described in the PSAC. To the extent the poster made any additional promise—such as an assertion that Title VII governs Defendants' actions—the PSAC fails to allege its existence. Because the PSAC does not allege any breach of a promise made in the subject poster, the poster cannot serve as the basis for a breach of contract claim.

Second, Workforce's employee handbook did not create a contract with Plaintiffs because the handbook expressly stated that its contents do not create a contract with Workforce's employees. Under California law, an employee handbook that expressly clarifies that it is not to be considered part of an employment contract cannot provide the basis for a breach of contract claim. *See, e.g.*, *Haggard v. Kimberly Quality Care, Inc.*, 46 Cal. Rptr. 2d 16, 24–25 (Ct. App. 1995) (relying on a handbook's statement that its contents did not create contractual rights to conclude that the handbook could not support a claim of contractual agreement). Defendants have offered a complete version of the handbook.[3] The first page of the handbook states the following:

> The policies and procedures contained in this manual constitute guidelines only and have been prepared for the use and reference of role players employed by the Company on a government services contract to support U.S. Military training. They do not constitute an employment contract or any part of an employment contract, nor are they intended to make any commitment to any employee concerning how individual employment action

---

[3] Normally, the Court may not consider evidence offered by a defendant when considering the sufficiency of a plaintiff's allegations. The Court may consider the contents of the handbook offered by Defendants in these circumstances, however, because the handbook is central to Plaintiffs' claims of breach of contract and fraud, the PSAC refers to a copy of the handbook that provides only an excerpt of its contents, and Plaintiffs do not contest the authenticity of the copy offered by Defendants. *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) ("[W]e may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

can, should, or will be handled.

(ECF No. 42-2 at 8.) It is clear that Workforce's handbook disavowed any contractual rights stemming from its provisions; as a result, it could not have supported a contractual agreement between Workforce and Plaintiffs. *See Gariblaid v. Bank of Am. Corp.*, No. C 13-02223 SI, 2014 WL 1338563, at *3 (N.D. Cal. Apr. 1, 2014) (reaching same conclusion).

Last, the statement on BBNC's website regarding discrimination, without further supporting allegations, does not alleged a contract between BBNC and Plaintiffs. There is no allegation in the PSAC stating that any of Plaintiffs viewed BBNC's website or read and understood the statement regarding discrimination. Nor is it reasonable to infer, based on the allegations that appear in the PSAC, that any of Plaintiffs did so. As the PSAC and its predecessors allege, only a handful of Plaintiffs in this case "speak or understand English," and "[o]f those who speak English, far fewer can read English." (PSAC ¶ 4.) Without any additional allegations suggesting that any of Plaintiffs viewed BBNC's website, let alone read the statement at issue, Plaintiffs cannot rely on that statement in asserting a breach of contract claim. *Cf. Herrera v. Estee Lauder Cos., Inc.*, No, SACV 12-01169-CJC (ANx), 2012 WL 12507876, at *3 (C.D. Cal. Sept. 20, 2012) (dismissing on standing grounds plaintiffs' claim that defendant made false statement on a website because plaintiffs failed to allege that they viewed the website). Under California law, an essential element of a contract is consent. *See* Cal. Civ. Code § 1550 ("It is essential to the existence of a contract that there should be: [1] Parties capable of contracting; [2] Their consent; [3] A lawful object; and, [4] A sufficient cause or consideration."). Without ever seeing the representation on BBNC's website, none of the plaintiffs in this case could have consented to that provision as a term of any contract.[4]

---

[4] Defendants also point out that the PSAC alleges that this statement was on BBNC's website "[a]t the time Plaintiffs' First Amended Complaint was filed." (PSAC ¶ 126(c).) According to the declaration of Carol Giannini—Workforce's General Manager until July 2017—Workforce ended Plaintiffs' employment in July 2017. (ECF No. 42-2.) The First Amended Complaint was not filed until October

7

In sum, the PSAC, as currently proposed, does not present a plausible claim for breach of contract. Amending the FAC to add such a claim would therefore be futile.

### B. Fraud and Deceit

The second claim Plaintiffs seek to add is for fraud and deceit. Such a claim requires a plaintiff to show (1) "misrepresentation (false representation, concealment, or nondisclosure)"; (2) "knowledge of falsity (or 'scienter')"; (3) "intent to defraud, i.e. to induce reliance"; (4) "justifiable reliance"; and (5) "resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 974 (Cal. 1997) (quoting *Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996)). The PSAC alleges that Defendants engaged in fraud and deceit by making the same three representations underlying the proposed breach of contract claim discussed above. (*See* PSAC ¶ 137.) For the same reasons discussed above, these statements cannot support a fraud and deceit claim.

First, the poster at GTS's office cannot support a claim for fraud because there is no allegation in the PSAC that Defendants did anything contrary to what the poster (as it is described in the PSAC) stated: there is no allegation, for example, that GTS prevented Plaintiffs from contacting the EEOC after Plaintiffs experienced discrimination. As a result, the PSAC does not allege, with respect to the poster, any misrepresentation. Second, Workforce's handbook could not have induced any reliance. Its preface stated: "[t]he policies and procedures contained in this manual constitute guidelines only and . . . are [not] intended to make any commitment to any employee concerning how individual employment action can, should, or will be handled." (ECF No. 42-2 at 8.) Any reliance on the assertions made inside the handbook would not have been reasonable. *See OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,

---

6, 2017, after Plaintiffs stopped working for Workforce. (ECF No. 5.) This contention does not support Defendants' futility argument, however, because the inquiry here asks only whether it is reasonable to infer that Plaintiffs viewed the statement on BBNC's website. The PSAC's allegation that the subject statement was on BBNC's website on October 6, 2017, enables a reasonable inference that the same statement was there prior to that date.

68 Cal. Rptr. 3d 828, 863 (Ct. App. 2007) ("To establish [justifiable reliance], plaintiffs must show (1) that they actually relied on the defendant's misrepresentations, and (2) *that they were reasonable in doing so*." (emphasis added)). Last, the statement on BBNC's website cannot support a fraud claim because there is no allegation that any of Plaintiffs viewed the statement. Without at least enabling the inference that anyone viewed the statement, Plaintiffs cannot allege reliance.

## IV. Conclusion

For the reasons stated above, permitting Plaintiffs to file the PSAC as it is currently composed would be futile.[5] Additional factual allegations, however, might enable Plaintiffs to assert a plausible claim of breach of contract and/or fraud and deceit. As a result, the Court DENIES the motion to amend without prejudice. If Plaintiffs wish to seek further amendment of the operative complaint, they must do so within fourteen days of the date this order is issued.

In their opposition to this motion, Defendants highlight the fact that Plaintiffs' counsel has consistently failed to meet Court-established deadlines in this case and has failed to adhere to the Court's local rules. (*See* ECF No. 42 at 30–31.) The Court acknowledges this pattern of conduct, and it warns Plaintiffs' counsel that it is unlikely to grant a last-minute (or untimely) request to extend the deadline for filing any further motion to amend the complaint.

//

---

[5] At the conclusion of their opposition to the motion to amend, Defendants also assert that, by raising these new claims, Plaintiffs are "improperly attempt[ing] to reopen [their] Title VII claims" that the Court dismissed in its earlier ruling. (ECF No. 42 at 31–32.) The Court rejects this assertion. As the Court explained in its previous ruling, while Title VII does not govern Defendants' conduct as employers, contract and/or tort law may provide Plaintiffs with an analogous claim if Defendants made a promise to Plaintiffs that Defendants would adhere to Title VII's provisions. (*See* ECF No. 18 at 6 ("Parties cannot amend a statutory provision via contract. They can, of course, agree on terms in a contract paralleling the requirements and prohibitions of a statute. But even if Defendants' contract with the federal government commits Defendants to a nondiscrimination policy mirroring Title VII, Plaintiffs would not be able to seek legal redress through Title VII; instead, Plaintiffs would have to rely on a different source of law for their claims.").)

9

3:17-cv-01036-GPC-AGS

**IT IS SO ORDERED.**

Dated: July 20, 2018

Hon. Gonzalo P. Curiel
United States District Judge