UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABUCAR NUNOW ABIKAR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRISTOL BAY NATIVE CORPORATION, et al., <br><br> Defendants. | Case No.: 3:17-cv-01036-GPC-AGS <br><br> **TENTATIVE ORDER DENYING PLAINTIFFS' MOTION FOR CERTIFICATION OF CLASS ACTION** <br><br> **[ECF No. 55]** |

Before the Court is Plaintiffs' Motion for Certification of Class Action. ECF No. 55. Plaintiffs in this case are refugees from Africa and were formerly employed by Defendants to assist training Marines in African culture. In this litigation, Plaintiffs claim that Defendants harassed and discriminated against them based on their race, national origin, and religion.

Plaintiffs now move to certify the proposed class. Based in the reasoning below, the Court tentatively denies Plaintiffs' Motion for Certification of Class Action. The parties will be permitted to address the tentative ruling at the scheduled hearing on December 14, 2018 at 1:30 p.m.

# I. BACKGROUND

A. <u>Factual Background</u>

The following allegations are taken from Plaintiffs' First Amended Class Action

Complaint ("FAC").  Plaintiffs are current or former employees of Defendants Glacier Technical Solutions, LLC, Bristol Bay Native Corporation, and Workforce Resources. FAC, ECF No. 5 ¶ 2.   Bristol Bay is the parent company of Glacier Technical Solutions ("GTS") and Workforce Resources.  *Id.* ¶¶ 30-32.  Defendants operate as joint employers with respect to the allegations in the FAC.  *Id.*

Defendants contract with the U.S. Department of Defense to train Marines in African, Iraqi, Afghani, and Filipino culture.  *Id.* ¶ 3.  Defendants employ East African refugees to roleplay as shopkeepers, village elders, and insurgents in simulated villages. *Id.*  The simulations teach Marines how to conduct safe and effective counter-insurgency operations.  *Id.*  This roleplay employment is temporary, part-time, and sporadic.  *Id.* Members of the proffered class have worked for Defendants since 2010.  *Id.*  The East African refugees Defendants employ are either citizens or permanent residents of the United States.  *Id.* ¶ 4.

Defendants have a consistent history of treating East African role-players less favorably than role-players who are not East African.  *Id.* ¶ 6.  Most of this treatment was advanced and effected by the site manager Habit Tarzi, and was adopted and endorsed by managers Carol Giannini, Weston Giannini, Atiq Hamid, and David Tarzi.  *Id.*  For years, the East African employees complained to Defendants about receiving disparate treatment and being subjected to discriminatory harassment.  *Id.* ¶ 9.  When the employees objected to this abuse, Defendants increased the mistreatment and threatened terminating their employment.  *Id.*  Defendants continued to treat East African roleplayers differently and adversely than similarly situated role-players from Iraq, Afghanistan, or the Philippines.  *Id.*

Beginning in December 2015 to February 2016, dozens of East African role-players filed complaints of discrimination, harassment, and retaliation with the EEOC. *Id.* ¶ 10.  Defendants nonetheless persisted in their mistreatment.  *Id.*  On July 12, 2016, as a group, the East African role-players filed an unfair labor practice charge with the NLRB.  *Id.* ¶ 11.  Defendants still continued their adverse actions.  *Id.*

The FAC presents three classes. The "East African Class" consists of female and male refugees from Somalia, Ethiopia, the Democratic Republic of Congo, and Burundi. *Id.* ¶ 13. The "Female Class" consists of female East African refugees. *Id.* The "Muslim Class" consists of Muslim East African refugees. *Id.*

Plaintiffs claim that Defendants engaged in discrimination and harassment of the East African Class by: 1) subjecting them to insults, ridicule, scorn, and mockery directed toward their race, color, national origin, language, culture and traditions.; 2) requiring them to perform janitorial duties outside of their job description and without compensation but did not require similarly situated non-East African Class members to perform those janitorial duties; 3) failing to provide them with promotional opportunities, rest and meal breaks, and food, and water to the same extent and in as favorable a manner as provided to similarly situated non-East African Class members; and 4) retaliating against them for complaining about the adverse treatment. *Id.* at 6-7.

Additionally, Plaintiffs claim that Defendants engaged in discrimination and harassment of the Female Class based on gender/sex by: 1) subjecting them to insults, ridicule, scorn, and mockery; 2) refusing to allow them to wear "traditional" clothing but allowing non-Female Class members to wear traditional clothing; 3) requiring them to perform "stereotypically female cleaning and housekeeping duties" outside their job description and without compensation but not requiring non-Female Class members to do so; 4) failing to provide them with promotional opportunities to the same extent as to similarly situated non-Female Class members; and 4) retaliating against them for complaint about the adverse treatment. *Id.* at 7-9.

The FAC claims that Defendants engaged in discrimination against the Muslim Class by: 1) failing to provide religious accommodation; 2) subjecting them to insults, ridicule, scorn, and mockery; and 3) retaliating against them for complaining about the adverse treatment. *Id.* at 8-9.

B.    Procedural History

Plaintiffs filed their Complaint on May 19, 2017. ECF No. 1. On October 6, 2017,

Plaintiffs filed their First Amended Complaint.[1]  ECF No. 5.  Count IV of the FAC claimed that Defendants' practices and policies constitute illegal race discrimination with respect to the making, performance, and termination of contracts prohibited by 42 U.S.C. § 1981.  FAC at 29.  In Counts VII – X, Plaintiffs claim under California Government Code §§ 12940(a) and (j) that Defendants discriminated against and harassed Plaintiffs on the basis of race, color, national origin, gender/sex, and religion.  FAC at 31-35.  In Count XII, Plaintiffs claimed that Defendants failed to prevent discrimination and harassment in violation of the California Fair Employment and Housing Act ("FEHA").  *Id.* at 35.  Count XIII advances a claim for retaliation in violation of FEHA.  *Id.* at 36.

Plaintiffs have now filed a Motion for Class Certification.  ECF No. 55.  Plaintiffs request the Court certify a class

> of all refugees living or formerly living in the United States, from Somalia, Ethiopia, the Democratic Republic of the Congo, Burundi, and other African countries (collectively, "East African" or "East African Countries"), who work or worked as role-players for any of the Defendants at any time between January 01, 2010 and the date of judgment in this action, who allege they were treated worse than their counterparts because of race, color, and national origin[.]

Pls.' Mot. at 2.

Plaintiffs also ask the Court to appoint the named Plaintiffs as class representatives, and appoint Marilyn Spencer and David Duchrow as co-lead counsel.  *Id.*

## II. DISCUSSION

A.  <u>Legal Standard</u>

Class actions are governed by Federal Rule of Civil Procedure 23.  Rule 23(a) allows a class to be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the

---

[1] In an order on Defendants' motion to dismiss the FAC, the Court dismissed Counts I, II, III, V, VI. ECF No. 18

claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In order to certify a class, each of the four requirements of Rule 23(a) must first be met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Next, in addition to Rule 23(a)'s requirements, the proposed class must satisfy the requirements of one of the subdivisions of Rule 23(b). *Zinser*, 253 F.3d at 1186. Furthermore, Rule 23 requires that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).

"A plaintiff seeking class certification bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiff has met its burden." *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 507 (N.D. Cal. 2011) (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 158-61 (1982); *Doninger v. Pac. Nw. Bell Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977)).

B.    Analysis

    1.    Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

Plaintiffs define the class as "all refugees living or formerly living in the United States, from Somalia, Ethiopia, the Democratic Republic of the Congo, Burundi, and other African countries . . . who work or worked as role-players for any of the Defendants at any time between January 01, 2010[,] and the date of judgment in this action [.]" Pls.' Mot. at 2. Plaintiffs assert that there are approximately 100-125 members of the class.

5

Pls.' Mem. at 9, ECF No. 55-1.  In support of this assertion, Plaintiffs cite the declarations of Said Abiyow and Spencer.  *Id.*  Said Abiyow asserts that he is aware that Defendants "employed at least 100 to 125 people [] as African role players; these individuals worked off and on between 2010 and 2017."  Abiyow Decl., ECF No. 55-26 at 14.  Spencer asserts that approximately 100 individuals who worked for Defendants as African role players have signed representation agreements with her firm.  Spencer Decl., ECF No. 55-26 at 19.

Plaintiffs define the proposed class as refugees from Africa.  Pls.' Mot. at 2.  However, Abiyow does not attest as to how many refugees Defendants employed as African role players.  Similarly, Spencer does not allege how many of the individuals who signed representation agreements are refugees.

Moreover, while Abiyow asserts the number of employees from 2010 to 2017, this range includes a period of time that is beyond the applicable statute of limitations.  Plaintiffs filed their complaint on May 18, 2017.  ECF No. 1.  Plaintiffs raise claims under 42 U.S.C. § 1981, which are subject to a four-year statute of limitations.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Plaintiffs' claims under FEHA can only go as far back as one year before they filed their administrative complaints.  *See* Cal. Gov't Code § 12960(d) ("No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred[.]").  The earliest EEOC charge filed by Plaintiffs was filed on January 4, 2016.  ECF No. 7-4 at 8.  Therefore, the class period for any FEHA claims would begin on January 4, 2015.

Abiyow does not allege the number of East African role players Defendants employed during the applicable statute of limitations period.  Spencer also does not assert how many individuals she has retained who worked for Defendants during this period.  Such evidence is particularly important here as Plaintiffs allege in their complaint that class members' employment was "temporary" and "sporadic."  FAC ¶ 3.  Plaintiffs have not pointed the Court to evidence that the class so numerous that joinder is impracticable

of members that were employed by Defendants from May 18, 2013, onward. *See Jeffries v. Pension Trust Fund*, 172 F.Supp.2d 389, 394 (S.D.N.Y.2001) (while plaintiff alleged that a large number of union's members were unemployed, it failed to proffer evidence of how many laid-off members suffered the alleged injury; noting that while the court may make "common sense assumptions to support a finding of numerosity," it may not "do so on the basis of pure speculation without any factual support") (citations omitted). The Court finds that Plaintiffs have not demonstrated numerosity.

### 2. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality requires that "the class members 'have suffered the same injury.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Falcon*, 457 U.S. at 157. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

Plaintiffs assert that there are common questions of law and fact affecting rights of each members of the class. Pls.' Mem. at 12. These include: whether Defendants subjected class members to insults and scorn directed toward their race, color, and national origin, whether East African role-players were required to perform janitorial duties outside of their job description and without compensation, whether non-East African role-players were *not* required to perform janitorial duties outside their job description or without compensation, and whether East African role-players were not provided promotional opportunities, breaks, water, and food to the same extent and in as favorable a manner as provided to similarly situated non-East African role-players. *Id.* at 12-13.

Plaintiffs have shown the existence of shared legal issues common to the class

members. The Court finds that the commonality requirement has been met. The Court will note, however, that Plaintiffs do not assert that there are any common questions of law or fact as it relates to any religious discrimination.

### 3. Typicality

To satisfy Federal Rule of Civil Procedure 23(a)(3), Plaintiffs' claims must be typical of the claims of the class. The typicality requirement is "permissive" and requires only that Plaintiffs' claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "[C]lass certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* (citation omitted and quotation marks omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted).

Plaintiffs assert that each member of the proposed class was required to perform janitorial duties and was denied adequate water while working because of race, color, or national origin. Pls.' Mem. at 9-10. Plaintiffs have thus shown that the class members have similar injuries, the claims are based on conduct not unique to the named Plaintiffs, and that class members have been injured by the same conduct.

### 4. Adequacy

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their

counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

The FAC names as representative plaintiffs: 1) Abucar Nunow Abikar; 2) Barkadle Sheikh Muhamed Awmagan; 3) Arab Mursal Deh; 4) Majuma Madende; 5) Osman Musa Mohamed; 6) Osman Musa Muganga; 7) Rukia Musa; and 8) Fatuma Somow. FAC ¶ 1. Plaintiffs contend that the named Plaintiffs will fairly and adequately represent and protect the interests of all members of the proffered class. In support of this contention, Plaintiffs note that the named Plaintiffs participated in the EEOC and NLRB complaints, appeared at the Early Neutral Evaluation, and participated in providing information to counsel. Pls.' Mem. at 11-12.

Defendants contend that Plaintiffs cannot establish adequacy of their representation. Defendants assert that Awmagan, Deh, Mohamed, Muganga, and Musa failed to sit for their duly-noticed depositions, and Madende appeared at hers but refused to testify. However, there is nothing before the Court to impute fault to the Plaintiffs themselves, rather than counsel. Specifically, with regard to Deh, Mohamed, Muganga, and Musa, Plaintiffs did not appear at those depositions because Plaintiffs' counsel was not available on the dates the depositions were scheduled. There is nothing before the Court to show that those Plaintiffs asserted that they were unavailable for depositions.

5.     Rule 23(b)

"If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that Plaintiff 'satisfies through evidentiary proof' at least one of the three subsections of Rule 23(b)." *Magadia v. Wal-Mart Assocs., Inc.*, 324 F.R.D. 213, 219 (N.D. Cal. 2018) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Rule 23(b) provides that a class action may be maintained if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Plaintiffs do not cite, by reference to Rule 23(b), which subsection they invoke in order to maintain their class action. However, Plaintiffs recite the language of Rule 23(b)(3) in their motion. Pls.' Mem. at 14. In neither their Motion or memorandum in support of the Motion do Plaintiffs cite or discuss Rule 23(b)(2). In their Reply, Plaintiffs cite authority analyzing Rule 23(b)(2) and also assert "Rule 23(b)(2) [is] not moot." Reply, ECF No. 95 at 13. District courts "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)). *See also Imageware Sys., Inc. v. M2SYS Tech., LLC*, No. 13CV846 DMS (JMA), 2013 WL 12089935, at *1 n.1 (S.D. Cal. Aug. 27, 2013) ("Parties should not raise new issues for the first time in their reply briefs."). Plaintiffs did not argue for class certification under Rule 23(b)(2) in their Motion or corresponding memorandum. It is Plaintiffs' burden to demonstrate they have satisfied one of Rule 23(b)'s subsections. To the extent Plaintiffs raise certification under Rule 23(b)(2) for the first time in their Reply, the Court finds that such argument is waived.

Turning to Plaintiffs' argument for certification under Rule 23(b)(3), that subsection has two requirements, referred to as predominance and superiority: "common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P.

23(b)(3)).

With regard to superiority, Plaintiffs assert that no other actions by individual members of the class have been initiated, and no likely or foreseeable difficulties exist in the management of the case as a class action. Pls.' Mem. at 15.

"The Rule 23(b)(3) predominance inquiry is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Dukes*, 564 U.S. at 376 (citation and quotation marks omitted). The predominance test of Rule 23(b)(3) is "far more demanding" than the commonality test under Rule 23(a)(2). *Amchem*, 521 U.S. at 624. *See also Hanlon*, 150 F.3d at 1022 ("[T]he presence of commonality alone [under 23(a)(2)] is not sufficient to fulfill Rule 23(b)(3).").

Though common issues need not be "dispositive of the litigation," *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001), they must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication" so as to justify "handling the dispute on a representative rather than an individual basis," *Hanlon*, 150 F.3d at 1022. Whether the predominance requirement is satisfied in a particular case "turns on close scrutiny of 'the relationship between the common and individual issues.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

"The predominance inquiry begins 'with the elements of the underlying cause of action.'" *Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-AGS, 2018 WL 4283032, at *5 (S.D. Cal. Sept. 7, 2018) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). "In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses); then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 426 (N.D. Cal. 2013). "The predominance inquiry requires that plaintiff demonstrate that common questions predominate as to each cause of action for which plaintiff seeks class certification." *Id.* (citing *Amchem*, 521 U.S. at

620). "Predominance requires that the common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006) (internal quotation omitted).

If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser*, 253 F.3d at 1190 (9th Cir. 2001). This is because, inter alia, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Id.*

Plaintiffs have not sustained their burden under Rule 23(b)(3) for two reasons. First, the only argument Plaintiffs make is the conclusor assertion that "[t]he questions of law and fact common to the members of the class predominate over any questions affecting only individual members." Pls.' Mem. at 14. "Conclusory assertions are not enough" for Plaintiffs to meet their burden. *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA JCS, 2012 WL 1604710, at *7 (N.D. Cal. May 7, 2012). Plaintiffs must "satisfy through evidentiary proof" Rule 23(b), yet Plaintiffs point the Court to no evidence in support of their Rule 23(b)(3) assertion. Though analyzing predominance "begins, of course, with the elements of the underlying cause of action," *Halliburton*, 563 U.S. at 809, Plaintiffs' predominance assertion makes no reference to their underlying claims.

Even diving into those claims, the Court is not persuaded that common questions would predominate over any questions affecting individual members. Under § 1981, individuals who bring private complaints of racial discrimination against an employer bear the burden of establishing a prima facie case of discrimination. *McDonnell Douglas*

*Corp. v. Green*, 42 U.S. 792 (1973). A plaintiff can establish a prima facie case of employment discrimination under *McDonnell Douglas* by showing that: (1) he is a member of a protected class; (2) he was qualified for his job and satisfactorily performed the functions of his position; (3) he experienced an adverse employment action; and (4) the employer treated other similarly situated individuals outside of the protected class more favorably. *Hawn*, 615 F.3d at 1156. Alternatively, a plaintiff can provide more direct evidence suggesting that there was discriminatory animus behind the adverse employment decision. *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148-1149 (9th Cir. 1997). "Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (citation omitted).

To state a claim for employment discrimination under FEHA, Plaintiffs must show that: (1) they are members of a protected class; (2) they were performing their jobs in a satisfactory manner; (3) they suffered an adverse employment decision; and (4) they were treated differently than similarly situated persons outside their protected class. *Alatraqchi v. Uber Techs., Inc.*, No. C-13-03156 JSC, 2013 WL 4517756, at *6 (N.D. Cal. Aug. 22, 2013) (citing *McDonnell Douglas*, 411 U.S. at 802; *Schechner v. KPIX–TV*, 686 F.3d 1018, 1023 (9th Cir. 2012)).

Courts have denied class certification in discrimination cases on grounds that the plaintiffs failed to meet the predominance requirement. In *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997), plaintiffs sought class certification for a class of African-American customers claiming that Motel 6 discriminated against its customers on the basis of race by denying accommodations or providing them with substandard accommodations. The plaintiffs' claims required them to show that "(1) a Motel 6 employee denied him a room (or rented him a substandard room) on the basis of his race and either (2) that that employee had the general authority to rent motel rooms or (3) that that employee was acting in accordance with a Motel 6 policy or practice of racial discrimination." *Id.* at 1006 n.13. The court of appeals held

that "the single common issue" in the case of "whether Motel 6 has a practice or policy of discrimination" was not "predominant over all the other issues that will attend the Jackson plaintiffs' claims." *Id.* at 1006.

> The Jackson plaintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination. The issues that must be addressed include not only whether a particular plaintiff was denied a room or was rented a substandard room, but also whether there were any rooms vacant when that plaintiff inquired; whether the plaintiff had reservations; whether unclean rooms were rented to the plaintiff for reasons having nothing to do with the plaintiff's race; whether the plaintiff, at the time that he requested a room, exhibited any non-racial characteristics legitimately counseling against renting him a room; and so on[.] These issues are clearly predominant over the only issue arguably common to the class—whether Motel 6 has a practice or policy of racial discrimination. Indeed, we expect that most, if not all, of the plaintiffs' claims will stand or fall, not on the answer to the question whether Motel 6 has a practice or policy of racial discrimination, but on the resolution of these highly case-specific factual issues.

*Id. See also Rustein v. Avis Rent-A-Car Sys., Inc.* 211 F.3d 1228 (11th Cir. 2000) (common issues in discrimination action brought by Jewish clients did not predominate because of need to determine damages for every plaintiff and identical discrimination was highly unlikely).

Courts have also found a lack of predominance specifically in the employment discrimination context. In *Harris v. Initial Security, Inc.*, the plaintiffs moved to certify a class consisting of "all black and dark-skinned employees of Defendant, . . . who were either terminated, passed over for promotion, subject to discipline, harassed and/or retaliated against on the basis of their race or color." No. 05 CIV. 3873 (GBD), 2007 WL 703868, at *7 (S.D.N.Y. Mar. 7, 2007) at *2. The plaintiffs claimed that they and twenty-five other black security guards were terminated because of the defendant's "policy of discriminating against non-Hispanics." *Id.* The plaintiffs also alleged that "two black guards . . . did not receive promotions despite being more qualified than Hispanic guards who did," and "four Hispanic guards who . . . were unqualified for

14

promotions but were nonetheless promoted ahead of more qualified black guards." *Id.* The plaintiffs claimed "that several black security guards . . . were forced by a Hispanic supervisor to work overtime, even though they had young children to care for at home, while similarly situated Hispanic guards were not." *Id.* Finally, the plaintiffs alleged that the manager "made several racist remarks towards blacks." *Id.* The district court denied class certification because

> there are no questions of law or fact common to the members of the proposed class so that a class action would be superior to Plaintiffs adjudicating their claims individually. At best, Plaintiffs have individual claims for discriminatory termination. They seek to represent a class of other plaintiffs who might also have claims for discrimination in promotions, overtime assignments, and discipline. Each individual claim would have its own provable set of facts and measure of damages. Therefore, class certification would be inappropriate.

*Id.* at *7.

Looking to the issues raised by Plaintiffs in this case, the Court is not convinced that common questions would predominate. To the extent Plaintiffs' claim that they were subjected to insults, such as that their "food smells bad," ECF No. 55-13 at 3, "the speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). *See also Barabin v. Aramark Corp.*, 210 F.R.D. 152, 162 (E.D. Pa. 2002), aff'd, No. 02-8057, 2003 WL 355417 (3d Cir. Jan. 24, 2003) ("[W]hile all of the plaintiffs aver that they were 'subjected to frequent harassment and unjustified disciplinary sanctions by Caucasian supervisors not imposed on similarly situated Caucasian employees,' the circumstances under which those acts of discrimination were committed and the resultant injuries are unique to each individual plaintiff.").

Plaintiffs also claim that they were required to perform janitorial duties that were outside of their job description. Plaintiffs have not pointed to any "evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008). It therefore

appears that there would be an individualized determination as to job descriptions. Plaintiffs similarly claim that they were required to perform janitorial duties without compensation. But Plaintiffs have not explained if there was a uniform policy of how Defendants paid the employees their wages, *i.e.* whether they were paid on an hourly or salary basis. There would have to be individualized determinations as to how Defendants paid the class members and if the employee was on the clock for the time they were doing janitorial work.

For Plaintiffs' claims of denial of promotions, it would be a highly individualized determination as to whether a particular class member was denied a promotion, what the criteria were for the promotion, whether members were qualified for the promotion, and whether non-class members who were considered for the promotion were qualified. "An individual's qualifications, experience, and background for a particular job or contract must be considered in any case where discrimination is alleged." *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 684 (N.D. Ga. 2001). "This is especially true where the plaintiffs' claims involve allegations of discrimination in promotions and hostile work environment, which are by their very nature extremely individualized and fact-intensive claims." *Id.*

With regard to the denial of breaks, Plaintiffs fail to show how "[l]iability [can] be established without individual trials for each class member to determine why each class member did not clock out for a full 30-minute meal break on any particular day." *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008). *See also Flores v. Supervalu, Inc.*, 509 F. App'x. 593, 594 (9th Cir. 2013) (holding that district court correctly found that plaintiff's claim that supervisors compelled employees to forego breaks "required examination of a number of human factors and individual idiosyncrasies having little to do with an overarching policy and thus failed to satisfy Rule 23(b)(3)") (citation and quotation marks omitted). Nor have Plaintiffs "rais[ed] an inference of class-wide discrimination through the use of statistical analysis." *Dukes*, 509 F.3d at 1180.

It also appears that damages determinations would be highly individualized. The

"Supreme Court has held that the plaintiff bears the burden of providing a damages model showing that 'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2018 WL 4468825, at *12 (N.D. Cal. Sept. 18, 2018) (quoting *Comcast*, 569 U.S. at 35). "The damages model 'must measure only those damages attributable to' the plaintiff's theory of liability." *Id.* (quoting *Comcast*, 569 U.S. at 35). Plaintiffs have provided no damages model to the Court that is susceptible of measurement across the entire class.

Plaintiffs contend that compensatory and punitive damages are common questions. Pls.' Mem. at 13. "Assuming arguendo that [Defendants] operated in a discriminatory manner, calculating compensatory and punitive damages, as opposed to simply back pay, for [dozens] of class members would prove to be quite an individualized task." *Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 549 (D.N.J. 2001). To the extent Plaintiffs seek back pay, Plaintiffs have not shown that Defendants are not "entitled to individualized determinations of each employee's eligibility for backpay." *Dukes*, 564 U.S. at 366. In sum, Plaintiffs have not sustained their burden under Rule 23(b)(3).

### 6. Adequacy of Class Counsel

Rule 23(g)(2) provides that if "one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." Rule 23(g)(1) states that in appointing class counsel, the Court:

> (A) must consider:
> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).

Rule 23(g)(4) requires that class counsel "fairly and adequately represent the

interests of the class." "[I]n this Circuit, adequacy of counsel is a valid and relevant basis for denying a motion for class certification." *Varela v. Indus. Prof'l & Tech. Workers*, No. CV 08-1012 SVW (RZX), 2009 WL 10670788, at *3 (C.D. Cal. Oct. 28, 2009). "Plaintiffs must show at this stage the presence on the field of adequate class counsel; the Court cannot certify a class action with counsel to follow." *Rambarran v. Dynamic Airways, LLC,* No. 14-CV-10138 KBF, 2015 WL 4523222, at *10 (S.D.N.Y. July 27, 2015).

The Court first needs to sort out who has properly applied to be class counsel. In their Motion for Class Certification, Plaintiffs request that Spencer and Duchrow be named as co-lead counsel and that Johnson and McCammon be named as co-associate counsel. On September 18, 2018, Plaintiffs asserted to the Court that they "are in the process of selecting additional counsel to add to their legal team and anticipates the additional attorneys will file their appearances within two weeks. At that time, attorney Thomas J. McCammon will reduce his role in this case." ECF No. 76 at 3. Plaintiffs have not clarified what McCammon's role is now or going forward.

In their Reply filed on October 19, 2018, Plaintiffs stated that they "are associating in additional counsel, as indicated in a separate pleading, incorporated herein by reference." Reply, ECF No. 95 at 10. Plaintiffs do not identify which "separate pleading" that is. Attached as an exhibit to Plaintiffs' Reply is the Declaration of Neil Pedersen. Pedersen Decl., ECF No. 95-4. Notably, Plaintiffs' Reply did not include an exhibit list or refer to the Pedersen's Declaration.

On November 28, 2018, Plaintiffs filed their Notice of Association of Counsel, ECF No. 106, asserting that attorneys Neil Pedersen, Michael Baltaxe, and Timothy Sottile have entered the case as co-counsel for Plaintiffs. On December 4, 2018, Plaintiffs filed a Supplemental Points and Authorities in Support of Class Certification. ECF No. 108. Plaintiffs attached declarations from these attorneys "in support of class certification," and requested the Court consider "the increased strength of Plaintiffs' legal team in deciding their certification motion." *Id.* at 1. Plaintiffs did not seek leave to file

supplemental briefing. Plaintiffs' new contentions raised in their Reply and supplemental briefing in support of their motion for class certification are simply untimely and improper. This Court "need not consider arguments raised for the first time in a reply brief." *Zamani*, 491 F.3d at 997.

Proffering this evidence after their Reply gave Defendants no chance to respond as to whether counsel is adequate. Plaintiffs offer no reason to the Court why they could not have retained these attorneys on this case prior to filing their motion for class certification. The Court will therefore not consider Pedersen, Baltaxe, and Sottile for purposes of Plaintiffs' motion for class certification.

          a.    <u>The work counsel has done in identifying or investigating potential claims in the action</u>

Spencer asserts that in March 2016, members of the proposed class first contacted her, and she has worked on this case since. Spencer Decl., ECF No. 55-26 at 19. At that time, Spencer began to represent the class members in the EEOC proceedings. *Id.* at 20. Moreover, in July 2016, Spencer filed charges to the NLRB. *Id.*

          b.    <u>Counsel's Experience</u>

Spencer asserts that she has practiced exclusively in the areas of employment and labor law, and has been lead attorney or second chair for 35 trials and arbitrations. Spencer Decl., ECF No. 55-26 at 21-22. Spencer also asserts that she has handled approximately 25 multi-plaintiff discrimination cases. Duchrow asserts that he has litigated four class action cases. Duchrow Decl., ECF No. 55-26 at 28. Johnson states that she practices employment law. Johnson Decl., ECF No. 55-26 at 36. Moreover, she has been lead attorney for approximately 20 trials and arbitrations, many of which involved discrimination, retaliation, or wage disputes. *Id.* at 37.

As Defendants note, Johnson has been previously warned by a court in this district after months of delay in obtaining a declaration that "[t]he Court will not permit further gamesmanship of the court system and opposing counsel in this manner." *Evenflo Co., Inc. v. Augustine*, No. 14CV1630 AJB (JLB), 2015 WL 13106024, at *3 (S.D. Cal. Jan.

7, 2015). Defendants also note that Duchrow has been sanctioned by another court. In *Glass v. Intel Corp., Inc.*, No. CV-07-1835PHXMHM, 2009 WL 4050875 (D. Ariz. Nov. 20, 2009), Duchrow represented plaintiff Glass. Defendant brought a motion for attorney's fees, arguing that "Plaintiff's action was frivolous, unreasonable, or without foundation." *Id.* at *1. The district court agreed. The court noted that Glass had brought three discrimination, harassment, and retaliation lawsuits against his former employer, and none of them "came even remotely close to presenting a meritorious claim for relief." *Id.* The court thus ordered attorney's fees to Intel.

> However, rather than making Kevin Glass solely responsible for this award, the Court will also award fees against Glass' attorney, Mr. David J. Duchrow. The Court notes that Mr. Duchrow represented Glass in all three of these now dismissed frivolous federal cases. In the Court's estimation, Mr. Duchrow played a critical role in enabling the continuation of Glass' litigation-which amounted to a tremendous waste of both the Court's time and the funds of Intel's shareholders. Mr. Duchrow's action is therefore sanctionable under 28 U.S.C. § 1927 and the Court's inherent power.

*Id.* at *2.

Duchrow asserts that those three cases later settled, and Duchrow then filed a motion for reconsideration of the sanctions order. Duchrow Decl. ¶ 7, ECF No. 95-1. The district court granted the motion for reconsideration, but later issued a nearly identical order as the prior sanctions order. *Id.* Duchrow appealed to the Ninth Circuit, and the parties settled. *Id.* While Duchrow emphasizes that no sanctions were paid as a result of the settlement, Duchrow has not shown that the district court erred in sanctioning him.

c.   Counsel's knowledge of the applicable law

Based on Plaintiffs' motion practice with respect to this instant motion, the Court questions counsel's knowledge of the applicable law. The class certification motion itself is noticeably deficient. Only once in the motion to certify class, and never in the memorandum, do Plaintiffs cite Federal Rule of Civil Procedure 23, the rule that governs class certification. As discussed above, Plaintiffs did not explain, by reference to the

rule, which subsection of 23(b) Plaintiffs invoke for class certification, and Plaintiffs' argument under Rule 23(b) was woefully deficient. For issues such of typicality, numerosity, and adequacy, which are essential requirements that Plaintiffs bear the burden of meeting, Plaintiffs give the Court no case law to demonstrate how to analyze whether Plaintiffs have satisfied these elements. Plaintiffs' analysis is also lacking with respect to the substantive law of their claims. Plaintiffs did not explain to the Court the elements of their substantive claims. The Court is not persuaded that counsel has adequate knowledge of the applicable law. *See Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) ("Not only has the proposed class failed to research legal issues adequately and to construct thoughtful pleadings, they have proved to be incapable of handling the workload involved in processing the extensive discovery material which necessarily arises in an action such as this.").

d.    <u>Resources that counsel will commit to representing the class</u>

The Court questions whether counsel has sufficient resources to commit to representing the class in this case. Even with three or four attorneys assigned to this case, counsel has routinely asked the Court to push back deadlines or asked defense counsel to reschedule discovery matters based on Plaintiffs' counsel unavailability. *See e.g.,* Joint Stipulation Re: Requested Continuance of Case Management Conference, ECF No. 27.

e.    <u>Any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class</u>

"In determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 156 (S.D.N.Y. 2002) (citation omitted). This case began poorly for counsel. Plaintiffs filed their original complaint on May 18, 2017. ECF No. 1. Though a summons was issued the next day, Plaintiffs failed to serve Defendants for four months, well beyond the deadline set by Federal Rule of Civil Procedure 4(m). It was not until October 4, 2017, that counsel began the process of litigating this case. ECF No. 4. In an Order entered on July

21

20, 2018, the Court cataloged counsel's pattern of consistently failing to meet Court deadlines and failing to follow Court rules. Order, ECF No. 45 at 9.

Counsel's filing of this motion for class certification has furthered revealed counsel's inadequacy. The Magistrate Judge set a deadline of July 27, 2017, to file a motion for class certification. ECF No. 33 at 2. On the deadline, Plaintiffs' counsel Spencer filed a defective motion that was incomplete and filled with redline edits intact. ECF No. 49 at 8. On July 30, 2018, Spencer called chambers and asserted that the defective filing was caused by her using the wrong web browser. Order, ECF No. 58 at 1-2. Plaintiffs finally filed the corrected motion for class certification on August 2, 2018. ECF No. 55.

Unfortunately, as this Court has previously noted:

> This is not the first time Attorney Spencer has "mistakenly" filed a draft filing near a deadline set by this Court. After Defendants filed a motion to dismiss and strike Plaintiffs' complaint, the Court set a response deadline of November 24, 2017. On the afternoon of November 22, Attorney Spencer called this Court's chambers suggesting that she might file a motion to extend Plaintiffs' response deadline. No such motion was filed. Rather, at 11:54 p.m. on November 24, Attorney Spencer filed a document purported to be a response to Defendants' motion. The document Attorney Spencer filed, however, was an incomplete draft. The following Monday, Attorney Spencer filed a completed version of the opposition. Three days later, she filed a motion for leave to file her untimely corrected response. In that motion, Attorney Spencer claimed that on the evening of November 24 she had trouble uploading her response because she was unable to find the hyperlink responsible for uploading documents. Shortly before midnight, the previously hidden link returned on her browser, permitting her to upload a document. In a hurry to file her response timely, however, Attorney Spencer claimed she accidentally filed a "much earlier draft." When she realized this mistake a few minutes later, the link to upload a document was, according to Attorney Spencer, nowhere to be found. The Court granted the motion for leave to file her untimely filing.
>
> Another similar incident occurred in May 2018. After several hiccups in the case management conference process—resulting at least in part from what appears to be Plaintiffs' failure to make initial disclosures—Judge Schopler issued a scheduling order setting the deadline for any motion to amend Plaintiffs' complaint at May 18, 2018. At midnight on the evening of

May 18, Attorney Spencer filed a motion to amend the complaint. She filed her proposed Second Amended Complaint in the early morning of May 19. Contrary to this Court's rules, Attorney Spencer failed to (1) obtain a hearing date on this motion, and (2) file a redline version of the proposed Second Amended Complaint demonstrating the differences between the operative complaint and the proposed version. On May 22, Attorney Spencer refiled her motion after obtaining a hearing date. She did not file the redlined version of the Second Amended Complaint until July 7. In denying Plaintiffs' motion without prejudice, the Court acknowledged Attorney Spencer's "pattern of conduct" relating to her failing to meet Court-ordered deadlines, and it warned that the Court "is unlikely to grant a last-minute (or untimely) request to extend the deadline for filing any further motion to amend the complaint."

Order, ECF No. 58 at 2-3 (internal ECF citations omitted).

Most recently, the Court was made aware that due to counsel's conduct, five named Plaintiffs failed to appear for their duly-noticed depositions, and one named Plaintiff refused to testify because counsel believed (with no evidentiary proof) that an interpreter for a different language would be present.

Based on counsel's conduct in this litigation, the Court does not find that counsel is adequate.[2]

### III. CONCLUSION

The Court tentatively finds that Plaintiffs have not carried their burden of demonstrating that the class is so numerous that joinder of all members is impracticable,

---

[2] *See e.g. Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346 (9th Cir. 1984) (denying certification because counsel failed to timely move for certification, failed to properly respond to discovery, failed to hire local counsel and submitted pleadings with "assembly line" quality); *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981) (class certification denied where counsel displayed "lack of competency" in completing discovery); *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 602 (S.D.N.Y. 1992) (denying class certification where "[counsel's] documented failures to comply with a variety of court orders, statutory requirements, and the Federal Rules of Civil Procedure indicate[d] that he [was] not an attorney who should be entrusted to conduct the proposed litigation"); *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 734 & n. 2 (S.D.N.Y.1979) (class certification denied where counsel's performance in commencing the action and proceeding with discovery had been unsatisfactory).

that questions of law or fact common to class members predominate over any questions affecting only individuals, or that class counsel is adequate.

**IT IS SO ORDERED.**

Dated: December 14, 2018

Hon. Gonzalo P. Curiel
United States District Judge

3:17-cv-01036-GPC-AGS